UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| RON RAMIREZ | ) |
|       Plaintiff, | )   2:12-cv-00639- JWS |
|       vs. | )   **ORDER AND OPINION** |
| CITY OF PHOENIX, | )   [Re: Motions at Docket 50, 72] |
|       Defendant. | ) |

## I.  MOTIONS PRESENTED

At docket 50, plaintiff Ron Ramirez ("Plaintiff" or "Ramirez") filed his second motion for summary judgment as to his § 1983 claim, alleging a deprivation of his First Amendment rights. Defendant, City of Phoenix ("Defendant" or "the City"), opposes the motion at docket 72. Defendant included in its opposition a separate motion to strike, requesting that the court strike statements in Ramirez's affidavit which directly contradict his sworn deposition testimony, amended complaint, and admissions. The court considers that request a separate motion. Plaintiff's reply to the motion for summary judgment and his response to Defendant's motion to strike is at docket 80.

Defendant's reply in relation to its motion to strike is at docket 81.  Oral argument was requested but would not be of additional assistance to the court.

## II.  BACKGROUND

Ramirez is employed by the City.  He is on full-time release from the City to work as the president of the Administrative Supervisory Professional and Technical Employees Association ("ASPTEA"), a labor organization for City employees.   While on full-time release, Ramirez's salary is paid by the City, and pursuant to an agreement between the City and ASPTEA, he must comply with all City rules, regulations, and policies.[1]  Ramirez is also chairman of the Coalition of Phoenix City Unions ("COPCU"), an organization representing all of the City's unions, whose Board consists of the presidents of all of the City employee labor unions and labor associations.[2]

On March 23, 2011, Ramirez was asked to speak to members of the Laborers' International Union of North America ("LIUNA") who were gathering at the state capitol.  At the gathering, Ramirez identified himself has chairman of COPCU and explained that the COPCU is the coalition of City employee unions.  He stated, "We know that we have one rogue Councilman right now and we've got to get rid of him . . . [y]ou have to vote; you have to also recall."[3]  He also indicated that he was urging all of the City's employee unions to join the gathering.  He also stated that the City's management supported the unions' positions but that they could not participate.[4]  The City became aware of his remarks when a video was posted on YouTube.

City Administrative Regulation 2.16 ("AR 2.16") requires that City "[e]mployees not engage in activities that are inconsistent, incompatible, in conflict with, or harmful to

---

[1] Doc. 73-3 at p. 5 (Ex. 3 at p. 2).

[2] Doc. 50-1 at ¶ 1; Doc. 73-1 at pp. 38-39 (Ex. 1 at pp. 56-57).

[3] Doc. 73-2 at ¶ 16.

[4] Doc. 73-2 at ¶ 16.

their duties as City employees." Among the prohibited actions are "use [of] any official City authority or influence for the purpose of interfering with or affecting the results of an election," "engag[ing] in political activities involving City . . . municipal elections, including recall elections for Mayor and City Council," and "use [of] an official City title or designate employment with the City in political . . . endorsements, or speeches."[5]

Ramirez was issued a written reprimand for violating AR 2.16. He filed suit in federal court, asserting a claim pursuant to 42 U.S.C. § 1983 based on an alleged violation of his First Amendment rights. The City filed a motion to dismiss. It argued that Ramirez's § 1983 claim should be dismissed because his statements were not made in his capacity as a private citizen. The court denied the motion to dismiss the §1983 claim based on the allegations in the complaint. The City also argued the Title VII claim should be dismissed. Ramirez conceded that he did not intend to bring a Title VII claim and the court concluded that, based on Ramirez's admission and the complaint itself, he did not bring such a claim. The City also argued that Ramirez is not entitled to declaratory or injunctive relief or punitive relief, but Ramirez conceded that he was not seeking such relief. The court acknowledged this admission in its order at docket 17. Plaintiff filed a motion for summary judgment, and the court denied it at docket 17, concluding that it could not determine whether Ramirez spoke as a private citizen or public employee given that the scope of his responsibilities as a public employee and the details surrounding his invitation to speak at the LIUNA gathering were unclear based on the record before it. Plaintiff subsequently amended his complaint. The City filed a motion to dismiss the amended complaint, and at docket 47 the court denied the motion.

Plaintiff now files this second motion for summary judgment, asking the court to grant judgment in his favor as to his §1983 claim. He argues that the undisputed facts show that the City deprived him of his First Amendment rights and that the City was

---

[5]Doc. 73-10 (AR 2.16).

acting under color of state law. The City opposes, arguing that summary judgment is not appropriate because there are issues of fact regarding whether Ramirez's speech at the LIUNA event was made as a private citizen and thus protected under the First Amendment. Alternatively, it argues that even if his speech could be considered protected, it has put forth sufficient facts to show that it had justification for treating Ramirez differently from other members of the public. The City also argues that many of the statements in Ramirez's affidavit, upon which he relies to claim that the relevant facts are undisputed, directly contradict his deposition testimony, statements in his complaint, and his admissions. It asks that all contradictory statements be stricken.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[7] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8] However, summary judgment is mandated under Rule 56(c) "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[10] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that

---

[6] Fed. R. Civ. P. 56(a).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[8] *Id.*

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[10] *Id.* at 323.

summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[11] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[12] All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[13] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[14]

## IV.  DISCUSSION

**A. Ramirez's motion for summary judgment**

Ramirez, an employee of the City on release to work as the president of ASPTEA pursuant to an agreement between the union and the City, moves for summary judgment on his § 1983 claim, which alleges that the City violated his First Amendment rights.  More specifically, he alleges that the City retaliated against him by issuing a written reprimand based on the speech he gave at the LIUNA gathering, where he advocated for the recall of a city council member.  When analyzing a First Amendment retaliation claim, the court must strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."[15]  The Ninth Circuit has refined this balancing act, requiring courts to apply a five-step inquiry.  Courts must consider the following:

---

[11]*Id.* at 323-25.

[12]*Anderson,* 477 U.S. at 248-49.

[13]*Id.* at 255.

[14]*Id.* at 248-49.

[15]*Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.[16]

The plaintiff has the burden of proof as to the first three factors. The burden shifts to the government to prove the last two.[17] "[A]ll the factors are necessary, in the sense that failure to meet any one of them is fatal to the plaintiff's case."[18]

Here, the first and third factors are not at issue. Ramirez's speech at the LIUNA gathering clearly touched on a matter of public concern, and the City issued the written reprimand because of the content of his speech. The City does not argue otherwise. The issue instead is with the second factor: whether Ramirez was speaking as a private citizen or a public employee. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[19] Thus, if Ramirez's speech at the LIUNA gathering was made pursuant to his professional responsibilities, then it is denied First Amendment protection. On the other hand, if he made his speech as a citizen, it is considered protected speech. "Statements are made in the speaker's capacity as a citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform."[20] The examination of a plaintiff's job responsibilities is not concrete and formal; that is, it is not dictated by a

---

[16] *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) (citing *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)).

[17] *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103 (9th Cir. 2011).

[18] *Dahlia*, 735 F.3d at 1067 n.4.

[19] *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

[20] *Eng*, 552 F.3d at 1070 (internal quotations omitted).

written job description or by the fact that the speech at issue related to the subject matter of a plaintiff's job.[21]  Rather, the inquiry is a practical one that requires an examination of all the circumstances surrounding the speech at issue.[22]  Whether an employee spoke as a private citizen or as a public employee is a mixed question of fact and law: "[T]he question of the scope and content of a plaintiff's job responsibilities is a question of fact" but "the ultimate constitutional significance of the facts as found is a question of law."[23]

Ramirez argues that the undisputed facts show he was not speaking as a City employee.  He argues that he was not attending the LIUNA gathering and speaking there as president of the ASPTEA, which is the position the City pays him to perform. Relying on his affidavit, he argues that he attended the gathering during his lunch break and as chairman of the COPCU, an informal group that he chairs outside his official job duties.  The City disputes these facts.  It puts forth evidence to show that as a salaried employee, Ramirez does not have official lunch breaks.  The City points to evidence to show that Ramirez's activities as chairman of COPCU overlap with his activities as president of the ASPTEA.  It points to evidence to show that COPCU has a board that is made up of all the presidents of the City's labor unions, which it argues demonstrates that it was Ramirez's responsibility as president of ASPTEA to participate in COPCU activities.  It points to evidence to show that making speeches advocating on behalf of city employees is part of his job duties.  Given this evidence, a reasonable juror could conclude that Ramirez's duties and responsibilities included attending union gatherings

---

[21] *Garcetti*, 547 U.S. at 420, 424-25.

[22] *Id.* at 424-25; *see also Dahlia*, 735 F.3d at 1074 (acknowledging "the fact-intensive nature of the inquiry").

[23] *Eng*, 552 F.3d at 1071 (internal quotation marks and citation omitted).

and speaking at such gatherings. Indeed, when an inquiry involves a mixed question of law and fact, it is often "inappropriate to take the question from the jury."[24]

Ramirez argues that in order for him to have been acting as a public employee, the specific speech in question, not speeches in general, must have been required as part of his professional responsibilities. He argues that the only way his LIUNA speech could have been made as a public employee is if he had been instructed or required to make that particular speech. He relies on *Garcetti v. Ceballos*.[25] In *Garcetti*, the Supreme Court held that the First Amendment does not protect employee speech when that speech is made "pursuant to . . . official duties."[26] But in *Garcetti*, the parties did not dispute that the plaintiff's speech at issue was made pursuant to his employment duties. Thus, the court noted that it had no reason to articulate a comprehensive framework for defining the scope of an employee's duties.[27] It provided some guidance, however, indicating that the inquiry is a practical, fact-intensive one and rejecting the idea that any one factor is dispositive.[28] It did not hold that an employee had to be instructed to make the speech in question.

Ramirez also argues that it is contradictory for the City to argue that his speech was part of his official duties but also in violation of City employee regulations. The fact that the City deemed his speech to be in violation of its administrative regulations is certainly a relevant consideration for the fact-finder, but it is not determinative of the issue.[29] Moreover, the City's position is more nuanced. It argues that speeches

---

[24]*Dahlia*, 735 F.3d at 1073 n.12 (internal quotation marks and citation omitted).

[25]547 U.S. 410 (2006).

[26]*Id.* at 421.

[27]*Id.* at 420-425.

[28]*Id.*

[29]*See Dahlia*, 735 F.3d at 1074-76 (setting forth principles that might guide the "fact-intensive inquiry mandated by *Garcetti*" and noting that whether the speech in question is in

advocating on behalf of city employees is part of Ramirez's responsibilities but that he went too far in the content of his speech by advocating for the recall of a city council member in violation of AR 2.16.

The issue presented here is whether Ramirez spoke pursuant to his professional duties as president of the ASPTEA, or, if he was speaking only as chairman of the COPCU, whether his activities as chairman of COPCU, including speeches made as chairman of that organization, are part of the tasks he is paid to perform. Given the record presented, there is a dispute as to these issues, precluding summary judgment in Ramirez's favor.

Even assuming that there were no dispute about Ramirez's job duties and his speech was protected, summary judgment in favor of Ramirez is nonetheless inappropriate. There are disputed facts relevant to the question of whether the City had an adequate justification for treating Ramirez differently than members of the general public.[30] The City submitted evidence to show that its policies include avoiding the appearance of impropriety, ensuring the administration of City services in an unbiased manner without favoritism to one group or political party, and guaranteeing employees are free from pressure to engage in political activity, and AR 2.16 is geared toward implementing those policies.[31] The City also points to evidence to support its argument that Ramirez violated AR 2.16 and thus by violating the regulation he adversely affected the implementation of its policies and mission to provide unbiased municipal services

---

direct contravention to an order is a relevant factor).

[30]As noted above, the forth factor relevant to the First Amendment retaliation issue is whether the City lacked an adequate justification for treating its employee differently from a member of the general public. If it had an adequate justification, the plaintiff's claim must fail. *Dahlia*, 735 F.3d at 1067, 1067 n. 4.

[31]Doc. 73-11 at ¶¶ 17-21; Doc. 73-10 at p. 1.

and to refrain from pressuring employees to engage in political activity.[32] While Ramirez argues that he did not violate AR 2.16, that is a matter of disputed fact, precluding summary judgment.

**B. The City's Motion to Strike**

The City filed a lengthy response to Ramirez's statement of undisputed facts. In its response, the City argues that much of Ramirez's affidavit in support of his motion for summary judgment should be stricken because it contradicts his prior testimony and discovery responses. The court acknowledges that Ramirez has been inconsistent as to some of the facts. However, the court concludes the City's arguments about Ramirez's contradictory statements simply demonstrate a dispute regarding Ramirez's job responsibilities and the speech he made on March 23, 2011, preventing summary judgment in favor of Ramirez. An order striking specific statements is not necessary for the City to avoid summary judgment. Moreover, any inconsistent statements on Ramirez's part can be used during cross-examination.

### V. CONCLUSION

Based on the preceding discussion, Ramirez's motion for summary judgment at docket 50 is DENIED and the City's motion to strike at docket 72 is also DENIED.

DATED this 3rd day of July 2014.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[32]*Eng*, 552 F.3d at 1071 ("Its qualified restriction of ordinarily protected speech recognizes that '[a] government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.'" (quoting *Garcetti*, 547 U.S. at 418)).